**UNITED STATES of America, Plaintiff,**

v.

**MacNeal JOHNSON a/k/a McNeal Johnson a/k/a Mack Neal Johnson, Defendant.**

**No. 88–CR–20054–BC.**

United States District Court, E.D. Michigan, N.D.

Jan. 9, 1989.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for plaintiff.

Mr. Benjamin L. Crossley, W.F. Allen & Associates, Saginaw, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

In this criminal case, the Court previously entered a memorandum opinion accompanied by an opinion and order of detention detailing the various interpretations of the statutory "crime of violence" concept. Defendant MacNeal Johnson's motion to dismiss the indictment in this case requires the Court to undertake yet another foray into the realm of statutory terminology. Specifically, the Court must ascertain what Congress intended when it spoke of a "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (originally codified at 18 U.S.C. App. § 1202).

Because the Court recited the facts of this case in exhaustive detail in the prior memorandum opinion and order, only a brief synopsis of the controlling facts is necessary here. On October 19, 1988, the Grand Jury returned an indictment charging Defendant Johnson as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Additionally, the indictment charged a "violation" of 18 U.S.C. § 924(e), the Armed Career Criminal Act charge that carries with it a mandatory 15–year minimum sentence.[1] *See* 18 U.S.C. § 924(e). In his motion to dismiss the indictment, Defendant Johnson makes a two-pronged facial attack upon the indictment.

Defendant Johnson first contends that controlling Sixth Circuit precedent obviates the need to include an Armed Career Criminal Act ("ACCA") charge in an indictment. Thus, argues Defendant Johnson, the indictment in the case at bar is technically improper because it incorporates an ACCA charge. Also, Defendant Johnson insists that the ACCA is of no moment in his case

because he simply has not been previously convicted of three "violent felonies" or "serious drug offenses" necessary to trigger the ACCA. *See* 18 U.S.C. § 924(e). The Court will address each of these two arguments separately.

## I. Technical Impropriety of ACCA Charge in an Indictment

■ Conceptualization of the ACCA as either a separate offense or merely a sentence enhancement device has proved troublesome for the various United States Circuit Courts of Appeals. This difficulty is strikingly apparent in the Sixth Circuit's treatment of the ACCA. On February 26, 1988, a divided Sixth Circuit panel held that the ACCA creates a separate offense that must be charged in the indictment and established beyond a reasonable doubt. *See United States v. Brewer*, 841 F.2d 667 (6th Cir.1988). Under this standard, the Government would have to seek and obtain an indictment including an ACCA charge if it wished to have the sentencing court impose the ACCA mandatory minimum sentence on a convicted felon in possession.

Several months later, however, the *Brewer* court reversed itself on rehearing and ruled that the ACCA is merely a sentence enhancement device that need not be charged in the indictment and proved beyond a reasonable doubt. *See United States v. Brewer*, 853 F.2d 1319 (6th Cir. 1988) (on rehearing). According to Judge Krupansky's majority opinion on rehearing, the ACCA reflects congressional intent "to enact a statute that would delegate sentencing authority to a trial judge to enhance the sentence of a recidivist offender[.]" *Id.* at 1323. Thus, the rule in the Sixth Circuit per *Brewer* on rehearing is that the ACCA charge need not be included in the indictment nor established at trial beyond a reasonable doubt. Rather, the Court is assigned the responsibility of de-

---

1. The Government insisted at oral argument that it did not make an ACCA presentation to the Grand Jury, but the indictment on its face specifically alleges that Defendant Johnson's charged conduct was "in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(1)(B) *and 924(e)*." *See* Indictment (emphasis added). The fact that the indictment contains an ACCA charge despite a lack of ACCA presentation to the Grand Jury is troubling, but not surprising.

termining whether a felon in possession can be sentenced under the ACCA.

The indictment including the ACCA charge was returned in this case soon after the Sixth Circuit reversed its original *Brewer* holding. While *Brewer* on rehearing unequivocally indicates that the Government would not have been precluded from seeking ACCA enhancement even if the indictment did not contain an ACCA charge, the Court finds that the Sixth Circuit's *Brewer* decision on rehearing does not render the indictment in this case fatally defective in that the indictment contains an ACCA charge. The appropriate remedy for the technical mistake in this case is simply to strike the ACCA reference from the face of the indictment as surplusage.[2] *See generally* Fed.R.Crim.P. 7(d).

## II. Application of the A.C.C.A. in the Case at Bar

Striking of the ACCA reference from the indictment does not solve the more fundamental issue raised by Defendant Johnson. That is, the Court's act of striking the ACCA citation from the indictment still leaves Defendant Johnson exposed to ACCA sentence enhancement in the event that he is convicted of the basic felon in possession charge. *See generally Brewer*,

**2.** The Court expresses no view as to whether an indictment charging only the offense of "felon in possession" can include more than one predicate felony, or whether the Government may introduce proof of more than one felony in a basic felon in possession trial. These issues were not framed by Defendant Johnson's motion, but they may become disputed matters if this case proceeds to trial.

**3.** *Brewer* on rehearing seems to assume that ACCA issues should be taken up only after conviction on a felon in possession charge. In light of the facts that ACCA enhancement is a matter for the Court and that Congress has prescribed such a wide disparity between mere "felon in possession" sentences and enhanced ACCA sentences, however, the Court deems it appropriate (and in fact necessary for meaningful plea bargaining) to decide the ACCA application question prior to trial on the felon in possession charge.

**4.** Based on the uncontroverted testimony at Defendant Johnson's detention hearing, the Court found that Defendant Johnson has the following convictions:

853 F.2d 1319 (on rehearing). The Government, in fact, has filed a formal notice of its intention to seek ACCA sentence enhancement in this case. *See* Government Notice (Nov. 9, 1988). Thus, the Court must address Defendant Johnson's contention that his prior felony convictions do not include three "serious drug offenses" or "violent felonies" necessary for ACCA sentence enhancement.[3] *Cf.* 18 U.S.C. § 924(e)(1). Before examining each of Defendant Johnson's seven[4] felony convictions, the Court must define the parameters constraining its analysis.

### A. Methodology for Identifying "Violent Felonies"

■ The principle dispute raised by the parties from an analytical standpoint is whether "violent felonies" are defined by reference to the elements of the generic offenses, or by reference to the specific conduct of the individual in the course of committing the felonies. Contrary to their positions on this precise question in the context of "crimes of violence," *see United States v. Johnson,* 704 F.Supp. 1398 (E.D. Mich.1988), the Government argues that the individual's conduct determines whether a "violent felony" occurred, and Defend-

(1) Larceny from a Store—Shoplifting (3/20/67);
(2) Breaking and Entering with intent to commit larceny in an unoccupied store (5/17/71);
(3) Carrying a concealed pistol (8/12/75);
(4) Delivery of heroin (8/7/78);
(5) Conspiracy to distribute heroin (8/7/78);
(6) Habitual criminal activity (12/14/78);
(7) Conspiracy to smuggle marijuana into state prison (11/26/80).

The parties agreed at the detention hearing that convictions 4, 5 and 6 all were based on a single criminal episode. Although some of these convictions were neither mentioned in the indictment nor in the Government's ACCA notice, the Court should pass upon all of Defendant Johnson's convictions established by the evidence to avoid having to review unmentioned convictions if the listed convictions are determined to be insufficient. *See Lockhart v. Nelson,* —— U.S. ——, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (permitting retrial under recidivist statute to substitute additional convictions for a predicate conviction found to be infirm).

ant Johnson asserts that the elements of the generic offenses control the "violent felony" inquiry. In the Court's prior opinion, the Government carried the issue with its position that the generic offense elements determine whether a crime is one "of violence." *See id.* at 1402; *see also United States v. Jones,* 651 F.Supp. 1309 (E.D.Mich.1987). Conversely, the Government now urges the Court to examine Defendant Johnson's actual conduct in each instance in the course of deciding whether his past convictions are for "violent felonies." [5]

With respect to the ACCA "violent felony" concept, two circuits have delved extensively into the ACCA's legislative history only to reach the single conclusion that "violent felonies" are defined in terms of a generic offense's elements. *See United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988); *United States v. Sherbondy,* 865 F.2d 996 (9th Cir.1988).[6] According to the *Headspeth* court, ambiguity in the statutory language compels the conclusion that "the catchall, 'otherwise' clause of 18 U.S. C. § 924(e)(2)(B)(ii) must be limited in its application to offenses which, as defined, pose *by their very nature* a serious potential risk of injury to another." *Headspeth,* 852 F.2d at 759 (emphasis in original). Similarly, the *Sherbondy* court reasoned that neither subsection (i) nor subsection (ii) of the "violent felony" definition permits inquiry into individual conduct:

> The answer to how section 924(e) should be construed is not readily apparent. The arguments in favor of a categorical approach, rather than one that requires an examination of the facts and circumstances of the particular criminal occurrence, are not overwhelming. Still, we

believe it apparent that the weight of reason and precedent favors the former. *Sherbondy,* 865 F.2d at 1010. In support of its conclusion, the *Sherbondy* court cited *Headspeth* with approval and noted that "it is unlikely that Congress would implicitly authorize, without any express language in [the ACCA], *ad hoc* mini-trials regarding an individual's prior criminal conduct. The problems with such hearings are evident." *Id.* at 1008. The Court emphatically agrees with the logic and holding of *Sherbondy;* there is no reason to analyze individual conduct for ACCA sentence enhancement purposes. Having resolved this crucial issue, the Court must turn to consideration of Defendant Johnson's various felony convictions.

**B. Analysis of Defendant Johnson's Seven Felony Convictions**

■ Defendant Johnson cannot be sentenced under the ACCA unless he has three prior convictions for "serious drug offenses" and/or "violent felonies." *See* 18 U.S.C. § 924(e). Each of these two terms has a precise statutory definition. Congress defined a "serious drug offense" in the following language:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ..., for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii) (subsection (i) omitted merely because Defendant Johnson has no prior *federal* convictions). A "violent felony" is statutorily defined in the following fashion:

> any crime punishable by imprisonment for a term exceeding one year that—

---

**5.** The parties' analytical flip-flop on the propriety of looking to individual conduct calls to mind the oft-quoted passage from Lewis Carroll's *Through the Looking Glass:*

> "When *I* use a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less." "The question is," said Alice, "whether you *can* make words mean so many different things." "The question is," said Humpty Dumpty, "which is to be master—that's all."

*See, e.g., Berklee College of Music v. Local 4412,* 858 F.2d 31, 35 n. 3 (1st Cir.1988) (quoting from L. Carroll, Through the Looking Glass 186–87 (Signet Classics 1960)).

**6.** The Government, in its brief, relies on the district court opinion in *United States v. Sherbondy,* 652 F.Supp. 1267, 1269 (C.D.Cal.1987). That case has since been reversed on the ACCA issue by the Ninth Circuit, which handed down its decision on December 15, 1988.

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). With these two categories of felony offenses in focus, the Court must determine whether Defendant Johnson's record meets the ACCA requirements.

### 1. Larceny from a Store—Shoplifting (3/20/67)

Under any imaginable formulation of a "violent felony," the crime of shoplifting cannot possibly be categorized as such an offense. Shoplifting, by its very nature, includes surreptitious conduct. Such an offense with its clandestine facet does not qualify as a "violent felony." *Cf.* M.C.L.A. § 750.360.

### 2. Breaking & Entering an Unoccupied Store

This is the type of crime that the Government in various jurisdictions has unsuccessfully attempted to include under the "violent felony" heading. *See, e.g., Headspeth,* 852 F.2d at 756, 758–59. As the Fourth Circuit persuasively reasoned in *Headspeth,* breaking and entering of an unoccupied store with the intent to commit larceny therein *may* occasionally involve some risk of injury to a person, but cannot possibly fall within the ambit of the "violent felony" definition prescribed by Congress. *See id.* at 758–59; *United States v. Chatman,* 869 F.2d 525, 527 (9th Cir.1989).

### 3. Carrying a Concealed Weapon

This conviction presents a much closer case than either of the first two offenses under consideration. While this Court's decision in *Jones,* 651 F.Supp. 1309, appears at first blush to offer some support to the Government on this question, a closer analysis of *Jones* demonstrates that the concealed weapon offense in the case at bar is not a "violent felony" under the ACCA. In *Jones,* this Court defined the "felon in possession" crime as a "crime of violence." *Id. Jones,* however, dealt with the statutory "crime of violence" term, rather than the elevated "violent felony" threshold. *Compare* 18 U.S.C. § 16 *with* 18 U.S.C. § 924(e)(2)(B); *see also Headspeth,* 852 F.2d at 757–58 (explaining legislative compromise leading to more stringent "violent felony" standard). Moreover, *Jones* posited four independent reasons for classifying *"felon* in possession" as a "crime of violence," three of which are based on the knowledge that the illegal actor is a previously convicted felon. *See Jones,* 651 F.Supp. at 1310 (reasons 1, 2 & 4). When the generic crime of carrying a concealed weapon is placed under the same analytical microscope, the three arguments limited to activity by *felons* are inapposite. *Cf.* M.C.L.A. § 750.227(2) (concealed pistol offense making no mention of prior felony conviction requirement). Only the third of the four *Jones* arguments speaks to the potentially violent nature of illicit gun possession by citizens in general, as opposed to felons. Thus, the "carrying a concealed weapon" conviction cannot be classified as a "violent felony" within the meaning of the statutory ACCA definition; the generic offense plainly does not meet the statutory definition's standard.

### 4. Delivery of Heroin (8/7/78)

Without question, Defendant Johnson's conviction for delivery of heroin constitutes a "serious drug offense" for ACCA purposes. *See* 18 U.S.C. § 924(e)(2)(A)(ii). Both federal law and Michigan law define heroin as a Schedule I controlled substance. *See* 21 U.S.C. § 812(b)(1) & Schedule I(b)(10); M.C.L.A. § 333.7212(1)(b). Under Michigan law, delivery of even a small amount of heroin carries a maximum twenty-year prison term. *See* M.C.L.A. § 333.7401(2)(a)(iv). Thus, Defendant Johnson's heroin delivery conviction serves as the first ACCA predicate in his criminal history. *Cf.* 18 U.S.C. § 924(e).

### 5. Conspiracy to Distribute Heroin (8/7/78)

Defendant Johnson's conviction for conspiracy to distribute heroin, though sufficient on its face to warrant "serious drug offense" classification, presents a difficult legal question. Specifically, Defendant

Johnson's conspiracy conviction was based on the same episode that resulted in his conviction for the substantive offense of heroin delivery. Moreover, the conviction resulted from the same judicial proceeding as the heroin delivery conviction. In short, the two convictions sprung from a single illicit undertaking. In Defendant Johnson's view, therefore, the two convictions cannot be treated as two separate ACCA "serious drug offense" predicates. In the view of the Government, however, the Court must recognize the two discrete convictions as two independent ACCA predicates. To resolve this dispute, the Court must look exclusively to federal law; state law has no bearing on the Court's ACCA inquiry. *See, e.g., United States v. Harden*, 846 F.2d 1229, 1232 (9th Cir.1988) ("However California handles its enhancement provision is irrelevant to how enhancement is treated under federal law.").

While the Sixth Circuit has not yet spoken on the manner in which prior related convictions must be treated for ACCA purposes,[7] many other circuits seem to have reached a general consensus on the issue. In the seminal case of *United States v. Petty*, 798 F.2d 1157 (8th Cir.1986), *vacated and remanded*, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810, *rev'd*, 828 F.2d 2 (8th Cir.1987), the Supreme Court vacated the original circuit decision and the Eighth Circuit reversed its own holding based on the United States Solicitor General's concession in the Government's brief before the Supreme Court. According to the Solicitor General's interpretation, as adopted by the Eighth Circuit in *Petty* on remand, "the legislative history strongly supports the conclusion that the [ACCA] was intended to reach *multiple criminal episodes that were distinct in time, not multiple felony convictions arising out of a single criminal episode.*" *Petty*, 828 F.2d at 3 (emphasis added). Despite the Government's spo-

radic efforts to recant or distinguish the Solicitor General's position in *Petty, see, e.g., United States v. Herbert*, 860 F.2d 620, 621 (5th Cir.1988) ("Despite this prior concession by the United States solicitor general, the government in this case argues that the language is not ambiguous."), the Solicitor General's "criminal episode" view has become the dominant rule in the United States Courts of Appeals. *See, e.g., United States v. Towne* (2d Cir.1988) (to be published; citation not yet available); *Herbert*, 860 F.2d at 622 (expressly adopting *Petty* on remand analysis); *United States v. Rush*, 840 F.2d 580, 581 (8th Cir.1988) ("[I]t is the criminal episodes underlying the convictions, not the dates of conviction, that must be distinct to trigger the provisions of the ACCA.").

Under the "single criminal episode" test based on the Solicitor General's reading of the ACCA, two criminal convictions for two acts committed at separate times obviously can be treated as two separate ACCA predicate convictions. *See, e.g., United States v. Wicks*, 833 F.2d 192, 194 (9th Cir.1987) (implicitly adopting, but distinguishing, "single criminal episode" rule from *Petty* because defendant "committed two burglaries at two different places at two different times."); *United States v. Gillies*, 851 F.2d 492, 497 (1st Cir.1988) (same); *cf. United States v. Greene*, 810 F.2d 999, 1000 (11th Cir.1986) (pre-*Petty* case involving "burglaries of four separate buildings at four separate locations on four different days"). The case at bar, however, involves nothing even remotely similar to such cases; Defendant Johnson simply was charged with both delivery of heroin and conspiracy to distribute heroin arising from a single episode of illicit activity. While Defendant Johnson unquestionably could be tried and convicted on both a substantive delivery charge and a related conspiracy charge, *see, e.g., Ianelli v. United States*, 420 U.S.

---

**7.** One month after the Court rendered its decision, the Sixth Circuit joined the growing majority of circuits in refusing to treat separate convictions as separate ACCA predicates if the convictions resulted from a single criminal episode. *See United States v. Pedigo*, No. 87–5953 (6th Cir. Feb. 17, 1989). Two weeks after issuing its ruling in *Pedigo*, however, the panel vacated its opinion and restored the case "to the active docket for further consideration." *See United States v. Pedigo*, No. 87–5953 (6th Cir. March 1, 1989). Thus, the Sixth Circuit still is not on record on the issue.

770, 777–78, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975), this fact does not perforce mean that the resulting convictions for conspiracy and the substantive offense can be treated as two separate ACCA predicates. On the contrary, the legislative history of the ACCA as interpreted by the Solicitor General and various federal circuits proscribes such treatment of two convictions springing from a single criminal episode. Thus, Defendant Johnson's 1978 conspiracy conviction *cannot* be treated as a second ACCA predicate conviction.

#### 6. Habitual Criminal Activity

Both parties concede that this "conviction" was more in the nature of a recidivist charge somewhat analogous to the ACCA itself. Based on the lack of any separate episode of underlying conduct to define this charge, the habitual criminal activity conviction cannot possibly serve as an ACCA predicate. *See* M.C.L.A. §§ 769.10, –.11 & –.12.

#### 7. Prison Marijuana Conviction

Defendant Johnson's final conviction involved the smuggling of marijuana into a state prison. This conviction cannot be regarded as a "serious drug offense" because it carries a maximum prison term of only five years. *See* M.C.L.A. § 800.285; *cf.* M.C.L.A. § 333.7401(2)(c). Moreover, the evident inclusion of surreptitious conduct in the offense obviously forecloses "violent felony" treatment of the conviction.

### III. Conclusion

Under binding Sixth Circuit precedent, the ACCA citation should be stricken from the indictment as surplusage. Because Defendant Johnson has only one valid ACCA predicate conviction, the Court shall strike the Government's separate ACCA notice as a legal nullity. Thus, further proceedings are required solely regarding the basic felon in possession charge against Defendant Johnson. The Court shall enter an order limiting further proceedings accordingly.