**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Phillip Wynens HADAWAY, Defendant–Appellant.**

No. 92–8552.

United States Court of Appeals, Eleventh Circuit.

Aug. 20, 1993.

---

James C. Marshall, Macon, GA, for defendant-appellant.

G.F. Peterman, III, Asst. U.S. Atty., Macon, GA, for plaintiff-appellee.

Before BLACK and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.

BLACK, Circuit Judge:

Phillip Hadaway pled guilty to possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5841 and 5861(d). Because police discovered and seized the sawed-off shotgun in Hadaway's home on November 20, 1990, the district court used the United States Sentencing Guidelines (Sentencing Guidelines or U.S.S.G.), as amended through November 1, 1990, to calculate the applicable guideline range. Facing twenty-one to twenty-seven months in prison, Hadaway sought to persuade the district court to impose a shorter sentence. He contended that the district court could depart downward because (1) his case was atypical, falling outside the "heartland" of U.S.S.G. § 2K2.1 and threatening "lesser harms," see U.S.S.G. § 5K2.11, and (2) the penalty prescribed by the Sentencing Guidelines was far too harsh under "community standards" in rural Georgia. Hadaway also argued that the district court should have applied U.S.S.G. § 2K2.1 as in effect before November 1, 1990. The district court declined to depart downward, apparently deciding that it lacked the authority to do so and rejecting Hadaway's request that it apply U.S.S.G. § 2K2.1 as if it had not been amended.

Although we conclude that the district court correctly applied U.S.S.G. § 2K2.1, as amended, and that a district court may not depart downward based on community standards, we vacate Hadaway's sentence and remand this case so that the district court may determine whether Hadaway's possession of an unregistered sawed-off shotgun was truly atypical or threatened lesser harms.

## I. BACKGROUND

Phillip Hadaway was stopped on the evening of November 19, 1990, by a Jones County, Georgia deputy sheriff who observed him weaving on the highway. With Hadaway's consent, the deputy sheriff searched the car. He found a small quantity of marijuana and two handguns. The deputy sheriff arrested Hadaway and took him to jail. There it was discovered that one of the two handguns in Hadaway's car had been reported stolen

from another county.[1]

The following morning, Hadaway executed a written consent to a search of his home. A bottle containing amphetamine residue and a sawed-off shotgun were found.

Hadaway was subsequently indicted for and pled guilty to possession of an unregistered sawed-off shotgun. Applying U.S.S.G. § 2K2.1, as amended through November 1, 1990, the district court determined that the appropriate sentencing range was twenty-one to twenty-seven months.[2] The district court declined to depart downward, apparently concluding that it lacked the authority to do so, and sentenced Hadaway to twenty-one months in prison.

## II. DISCUSSION

We address at length only Hadaway's arguments that the district court could have departed downward in this case.[3]

### A.

■■■ The threshold issue is whether Hadaway has raised an issue within the scope of appellate review. Appellate review of downward departure issues is limited. We may not, for example, review a district court's refusal to grant a downward departure on the merits. 18 U.S.C. § 3742(a). We may, however, determine whether a district court erred in concluding that it lacked the authority to depart downward. *E.g.,* United States v. Fossett, 881 F.2d 976, 979 (11th Cir.1989).

Although the record in this case is somewhat ambiguous, it appears that the district court declined to depart downward because it believed that it lacked the authority to do so

rather than because it determined that the facts did not warrant a departure. The district court commented that "there is not the flexibility that your counsel suggests to the Court that there ought to be.... The flexibility that the Court has is within the guideline range that applies." Furthermore, the district court did not correct Hadaway's counsel when he said: "[i]f I understood the Court's decision correctly, the Court, essentially, was saying that the Court felt it had no discretion." We, therefore, review each of the arguments advanced by Hadaway to determine whether the district court erred in concluding that it lacked the authority to depart.

### B.

■■ Hadaway argued first that a downward departure in this case was appropriate because his conduct was atypical. He contended that his possession of a sawed-off shotgun fell outside the heartland of cases Congress sought to address when it outlawed possession of sawed-off shotguns, *see* U.S.S.G. Ch. 1, Pt. A, n. 4(b), and that his conduct did "not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue," U.S.S.G. § 5K2.11. In an affidavit submitted at sentencing, Hadaway averred that, on a whim, he exchanged a bucket of sheetrock mud and some sheetrock tape for the sawed-off shotgun, intending to keep it as a curiosity or to use it for parts. Hadaway further averred that he did not keep the sawed-off shotgun among his admittedly large collection of firearms because he wasn't sure it worked.[4] On appeal, Hadaway argues that he had the "sawed-off shotgun for reasonable purposes with no intent to use it in the fashion that our

1. The owner of the "stolen" handgun later reported that he had left the handgun in Hadaway's car and forgotten about it.

2. The base offense level of 18 was reduced 2 levels for acceptance of responsibility. Hadaway's criminal history category was I.

3. Hadaway's contention that the district court should have applied the Sentencing Guidelines in effect before the Sentencing Guidelines were amended on November 1, 1990, is plainly without merit. Hadaway's possession of the sawed-off shotgun continued well beyond the date on which the amendments became effective.

4. We note that the affidavit Hadaway submitted at the sentencing hearing also indicated that he managed a sporting goods store that sold firearms; that he had previously been investigated for firearms law violations; and that he knew the barrel on the shotgun he possessed was illegally short.

gun laws are designed to deter."[5] This, according to Hadaway, takes his case outside the heartland of possession cases and indicates that his conduct threatened lesser harms.

Because it is clear that the district court had the authority to depart downward if it were persuaded that Hadaway's case truly was "atypical . . . where conduct significantly differs from the norm," U.S.S.G. Ch. 1, Pt. A, n. 4(b), or that Hadaway's conduct threatened lesser harms, U.S.S.G. § 5K2.11, we vacate the sentence. On remand, the district court should acknowledge that it possesses authority to depart downward on this basis and determine whether a downward departure is warranted in this case.

## C.

Hadaway also argued that the district court possessed the authority to depart downward because members of the rural Georgia community in which he lives find the sentence prescribed by the Sentencing Guidelines to be excessive. According to Hadaway, rural Georgians routinely violate federal firearms statutes[6] and those of his neighbors whom he or his lawyer polled were startled to learn that the penalty for possession of an unregistered sawed-off shotgun is approximately two years in prison. Hadaway argues, more generally, that the Sentencing Guidelines must give way if a community views a crime less seriously than did Congress and the United States Sentencing Commission. We disagree, and we join the

First and Fifth Circuits in holding that departures based on "community standards" are not permitted under the Sentencing Guidelines. *See United States v. Barbontin*, 907 F.2d 1494 (5th Cir.1990) (rejecting upward departure based on local intolerance for drug trafficking and large amount of drugs involved by "San Antonio standards"); *United States v. Aguilar–Pena*, 887 F.2d 347 (1st Cir.1989) (rejecting upward departure based on high incidence of and local antipathy toward cocaine trafficking in Puerto Rico).

Congress created the United States Sentencing Commission in 1984, *see* Sentencing Reform Act of 1984 (Title II of the Comprehensive Crime Control Act of 1984), 18 U.S.C. § 3551 *et seq.* and 28 U.S.C. §§ 991–98, and charged it with the task of developing uniform national sentencing guidelines. "A primary goal of sentencing reform [was] to eliminate sentencing disparity." S.Rep. No. 225, 98th Cong.2d Sess. 52, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3235. Congress explicitly directed the Sentencing Commission to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), because Congress concluded that "[s]entencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public," S.Rep. No. 225 at 45, U.S.C.C.A.N. at 3228.[7]

While Congress also instructed the Sentencing Commission to consider, *inter alia*,

---

5. Had the district court plainly acknowledged that it had the authority to depart downward, we would be prepared to conclude that the district court rejected Hadaway's "heartland" and "lesser harms" arguments on the merits.

  The district court's synopsis of federal law regarding possession of sawed-off shotguns—"So Congress came up and said, 'You shall not have a sawed-off shotgun'. . . . [T]he idea Congress had is to put those out of circulation"—is consonant with the plain language of the statute. Congress, quite simply, criminalized possession of an unregistered sawed-off shotgun; it did not require that possession be accompanied by intent to use the unregistered sawed-off shotgun to commit a violent felony. It is worth noting that the inherent lethality and *potential* for use in criminal activity led Congress to proscribe possession of an unregistered sawed-off shotgun in the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* and

26 U.S.C. § 5841 *et seq.*, along with, *inter alia*, unregistered possession of machine guns, bombs, and grenades.

6. Of course, Hadaway's contention that many rural Georgians possess unregistered sawed-off shotguns undercuts his argument that his case is atypical.

7. Statistical studies presented to Congress demonstrated that wide disparities were evident both within and among federal districts. For example, in the Second Circuit, sentences for identical actual cases could range from three to twenty years imprisonment. *See* S.Rep. No. 225 at 41–44, U.S.C.C.A.N. at 3224–27. Similarly, the average sentence for bank robbery in the Northern District of Illinois was only half the national average. Id. at 41, U.S.C.C.A.N. at 3224.

"the community view of the gravity of the offense [and] the public concern generated by the offense," 28 U.S.C. § 994(c), Congress indicated that "community standards" should influence the determination of an appropriate sentence "only to the extent they do have relevance," *id.* Like the First Circuit, "we have no reason to believe that the Commission failed to consider such community-related factors." *Aguilar–Pena,* 887 F.2d at 351. Accordingly, it cannot be said that "community standards" are "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b).

Moreover, departures based on community standards conflict fundamentally with the requirement that departures be based on the characteristics of the offense and the offender and be limited to the rare circumstances where "a *particular* case presents atypical features." U.S.S.G. Ch. 1, Pt. A, n. 2 (emphasis added). Downward departures based on community standards, in contrast, would apply *generally* to *every* violation of a specific federal statute by *any* person in a particular community.[8] Consequently, downward departures based upon local views about the gravity of particular crimes would undermine substantially the paramount goal of uniformity of sentencing for similar crimes and criminals. *See Aguilar–Pena,* 887 F.2d at 352–53.

Congress' repeated criticism of unwarranted disparity in sentencing based solely on community standards evinces Congress' belief that the community view of, and public concern generated by, offenses are of limited relevance and justify only limited variation in sentencing. *See, e.g., Aguilar–Pena,* 887 F.2d at 352. We do not mean to suggest that

district courts may not consider community standards when they sentence defendants. District courts may properly consider community standards when they determine where, within the applicable guideline range, a defendant's sentence should be set. We note that district courts retain latitude to fashion sentences that reflect community standards within the Sentencing Guideline ranges.[9] We simply hold that district courts may not depart from the range prescribed by the Sentencing Guidelines based on community standards.

Whatever the merits may be of allowing district courts to vary sentences for similar offenses committed by similar offenders to conform them to dissimilar community standards, the district court was clearly correct when it observed that "the final arbiter, the final decider of the debate is the Congress of the United States." Congress resolved that debate when it elected to limit the discretion enjoyed by district courts to tailor sentences to reflect community standards by requiring district courts to select a sentence within the range specified by the Sentencing Guidelines.

## III.  CONCLUSION

Accordingly, we vacate Hadaway's sentence and remand the case for the limited purpose of allowing the district court to determine whether a downward departure is warranted under U.S.S.G. Ch. 1, Pt. A, n. 4(a) or § 5K2.11 (Lesser Harms).

VACATED and REMANDED.

---

8.  If, for example, a downward departure were granted in one sawed-off shotgun case in Jones County, Georgia, it would presumably have to be granted in all sawed-off shotgun cases in Jones County. In short order, the United States Sentencing Guidelines would become meaningless, replaced by substitute sentencing guidelines written on an ad hoc basis by district courts for their district, or, following the thrust of Hadaway's argument, each county in their district.

9.  We also note that the Sentencing Commission set all guideline ranges at the widest limits per-

mitted by Congress under the Sentencing Reform Act. *See* 28 U.S.C. § 994(b)(2) ("If a sentence specified by the guidelines includes a term of imprisonment, the maximum of the range established ... shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months, except that, if the minimum term of the range is 30 years or more, the maximum may be life imprisonment."); U.S.S.G. Ch. 1, Pt. A., n. 4(h) ("The guidelines ... permit courts to exercise the greatest permissible range of sentencing discretion.")