[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 2, 2003
THOMAS K. KAHN
CLERK

No. 01-13532

_____

D. C. Docket No. 00-00053-CR-4-002

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BERNARD ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 2, 2003)**

Before BIRCH and BLACK, Circuit Judges, and PROPST[*], District Judge.

BLACK, Circuit Judge:

_____

[*]Honorable Robert B. Propst, United States District Judge for the Northern
District of Alabama, sitting by designation.

Bernard Adams appeals his sentence imposed after he pled guilty in 2001 to one count of knowingly and intentionally possessing with intent to distribute more than fifty grams of cocaine base. Appellant had two prior convictions—in 1994 and 1997—for carrying concealed weapons. These prior convictions constitute "crimes of violence" within the meaning of the career offender sentencing guideline. *See* U.S.S.G. §§ 4B1.1, 4B1.2; *United States v. Gilbert*, 138 F.3d 1371, 1372 (11th Cir. 1998). Accordingly, Appellant was treated as a career offender, which placed him in Criminal History Category VI, and consequently sentenced under the Guidelines to 262 months' imprisonment.[1] At his sentencing hearing, Appellant sought a downward departure, claiming his criminal history was seriously overrepresented. The district court denied his motion. He now appeals, raising the following issue: "Did the trial court correctly determine that it did not have the legal authority to downward depart where the trial court agreed that the defendant's criminal history was less serious than other Category VI defendants?"

As an initial matter, we note that a defendant may not usually appeal a district court's refusal to depart downward. *United States v. Baker*, 19 F.3d 605, 614–15

---

[1] At his sentencing, Appellant objected that his concealed weapons offenses were not crimes of violence. That objection is contrary to this Court's holding in *Gilbert*, which we will not revisit here. *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision.").

(11th Cir. 1994).  There is an exception to this rule, however, for those cases in which the court erroneously believed it lacked authority to depart.  *Id.* at 615.  Appellant claims the district court did not recognize its authority to depart downward in his case.

At the sentencing hearing, the district court stated the following:

> All right.  I'm not going to depart downward.  The reason is this: First, it is clear that the career offender provision applies.  Second, I do have discretion to depart downward on the conclusion that the criminal history substantially overrepresents the seriousness of the defendant's criminal history.
>
> . . . .
>
> But it is clear that I can depart downward even in a career offender situation on the conclusion that the criminal history ranking overrepresents the seriousness of a defendant's history.  That's established by *United States vs. Webb*, 139 F.3d 1390, an Eleventh Circuit 1998 case.
>
> So, I recognize the discretion.  I choose not to depart downward. I do so based on this analysis:
>
> And let me preface my remarks by saying that part of this is a legal analysis.  I recognize that the law ordinarily is that a discretionary determination not to depart is not reviewable, but part of my analysis is based on this legal analysis, which seems to me is a legal issue of the kind that ordinarily is reviewable.
>
> It seems to me that in exercising my discretion, the comparison I should make is not between Mr. Adams on the one hand and the ordinary or usual Category VI defendant.  The ordinary or usual Category VI defendant most of the time is somebody who has run up 12 criminal history points.  It seems to me, however, that the proper comparison for

3

me is between Mr. Adams, on the one hand, and the ordinary or usual person who gets a Category VI because he meets the career offender provision. That is, it seems to me that the Congress and the Sentencing Commission have made the decision that somebody gets moved into Category VI as a result of having two prior qualifying offenses.

. . . .

So, if I look at Mr. Adams and I say, "How is Mr. Adams' criminal history compared to most people I see who are Category VI?" it's a lesser history. He got three points. People in Category VI got 12 or more. They usually have a more extensive—they do have a more extensive criminal history.

On the other hand, if I look at Mr. Adams compared to the ordinary, the heartland case, where somebody had the level increased because they were a career offender, my conclusion is that Mr. Adams is not outside of the heartland. There are a number of cases I see where people have two qualifying offenses; and, as a result of two or more qualifying offenses, they are treated a career offender [sic]. That is precisely what the Congress and the Sentencing Commission intended. And so, if I look at this and I say, "I'm going to compare the defendant to the ordinary category of Criminal History Category VI," then what I have done essentially is to override essentially the legislative determination that somebody with two qualifying offenses should be treated more harshly.

So, if I'm wrong about that, then . . . , it seems to me the Eleventh Circuit ought to tell me I'm wrong in that approach, and I will be happy to look at the question of whether I would depart downward for Mr. Adams, because I think his criminal history is not as substantial as the heartland defendant who has a Category VI.

The transcript of the sentencing hearing reveals two things: (1) the district court did recognize it had the discretion to depart downward, assuming there was an appropriate basis for doing so in Appellant's case; and (2) it made its decision not to

depart downward based upon a legal interpretation of the correct "heartland" against which to compare Appellant when deciding whether his criminal history was overrepresented. The district court was quite clear it possessed the discretion to depart downward. This is not a case in which the district court was "bewildered and ambivalent as to whether the guidelines authorized a downward departure." *United States v. Webb*, 139 F.3d 1390, 1394 (11th Cir. 1998). To the contrary, the district court expressly noted its discretion to depart in three separate statements. At most, the district judge appeared to be ruminating about the need for guidance from this Court as to which group of defendants—all Category VI defendants or only those defendants placed in Category VI by virtue of being career offenders under U.S.S.G. § 4B1.1—served as the appropriate heartland against which to compare Appellant in deciding whether to exercise his undoubted discretion to depart downward.

Despite the district court's recognition of its discretion to depart downward, we nonetheless review Appellant's sentence. We do so because, while the district court raised an interesting legal question, it was the wrong question to ask on the facts of this case. It appears the district court applied the wrong guideline when it analyzed Appellant's motion for a downward departure under U.S.S.G. § 5K2.0. This Court has always recognized the distinction between guided and unguided departures. *United States v. Smith*, 289 F.3d 696, 710 (11th Cir. 2002). Unguided departures,

which proceed under U.S.S.G. § 5K2.0, are those not explicitly provided for in the Guidelines—i.e., they are departures for cases falling outside the heartland created by, *inter alia*, the guided departures established by the Sentencing Commission in formulating the Guidelines. *Id.* Analysis under U.S.S.G. § 5K2.0 is unnecessary where the Guidelines provide a specific basis for the relevant departure. *United States v. Hoffer*, 129 F.3d 1196, 1201 (11th Cir. 1997).

Downward departures for overrepresentation of criminal history are specifically provided for in U.S.S.G. § 4A1.3. *Smith*, 289 F.3d at 710 ("[T]he only permissible basis for a criminal history departure based on overrepresentation in this case was under U.S.S.G. § 4A1.3, and not under U.S.S.G. § 5K2.0."). The district court therefore conducted the incorrect analysis when it denied Appellant's motion for a downward departure.

Even under U.S.S.G. § 4A1.3, however, Appellant would not receive a downward departure. As we explained in *United States v. Rucker*, 171 F.3d 1359, 1363 (11th Cir. 1999), and *United States v. Phillips*, 120 F.3d 227, 232 (11th Cir. 1997), U.S.S.G. § 4A1.3 is concerned with the pattern or timing of prior convictions. *See also Smith*, 289 F.3d at 713. Appellant's criminal history differs from the benchmark given in the commentary to the Guidelines: "An example [of when a downward departure is warranted] might include the case of a defendant with two

6

minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  U.S.S.G. § 4A1.3, p.s.  Appellant's 1994 and 1997 concealed weapons offenses are not so temporally remote from his instant offense.  In addition, there is evidence of intervening criminal behavior beyond the two concealed weapons offenses that rendered Appellant a career offender.  When we look to the pattern or timing of Appellant's prior criminal behavior, we do not think his career offender status seriously overrepresents  his criminal history.  Even under U.S.S.G. § 4A1.3, Appellant's motion for a downward departure would have been denied.

Based upon a full review of the record, we conclude the district court did not abuse its discretion in denying Appellant's motion for a downward departure.

AFFIRMED.

PROPST, District Judge, dissenting:

I believe that the quoted language of the district court at the sentencing hearing reflects the type of ambivalence noted in *United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir. 1998), and, thus, that we should "resolve the ambiguity. . . in favor of the defendant and hold that the court's decision was based on its belief that it lacked the discretion to grant [Adams'] request for departure." *Id*. at 1395.

I base this on, *inter alia*, the following portions of the district court's language at sentencing.

> And let me preface my remarks by saying that part of this is a legal analysis. I recognize that the law ordinarily is that a discretionary determination not to depart is not reviewable, but part of my analysis is based on this legal analysis, which seems to me is a legal issue of the kind that ordinarily is reviewable.

> . . . .

> ...And so, if I look at this and I say, "I'm going to compare the defendant to the ordinary category of Criminal History Category VI," then what I have done essentially is to override essentially the legislative determination that somebody with two qualifying offenses should be treated more harshly.

> So, if I'm wrong about that, then, Mr. Gray, it seems to me the Eleventh Circuit ought to tell me I'm wrong in that approach, and I will be happy to look at the question of whether I would depart downward for

8

Mr. Adams, because I think his criminal history is not as substantial as the heartland defendant who has a Category VI.

> . . . .

> So, if I look at Mr. Adams and I say, "How is Mr. Adams' criminal history compared to most people I see who are Category VI?" it's a lesser history. He got three points. People in Category VI got 12 or more. They usually have a more extensive – they do have a more extensive criminal history.

The majority states that "the district court expressly noted its discretion to depart in three separate statements." In *Webb*, the court quoted the following from the district court sentencing hearing:

> Mr. Vineyard [the prosecuting attorney]: I want to make sure the record is clear the court recognizes it has the authority to downwardly depart but chose not to do so.
> The Court: That's what I said.

*Id*. at 1392.

Nothwithstanding that position of the district court, the *Webb* court stated:

> ...As noted, the record is far from clear as to the rationale underlying the court's denial of Webb's request for downward departure; on balance, however, the record more strongly suggests that the court believed that it was not authorized to depart downward in this case. We therefore resolve the ambiguity reflected in the record with respect to this issue in favor of the defendant and conclude that the court's decision was based on its belief that it lacked the discretion to grant Webb's request for a departure. *See United States v. Hadaway*, 998 F.2d 917,

9

919 (11th Cir. 1993) ("Although the record is somewhat ambiguous, it appears that the district court declined to depart downward because it lacked the authority to do so rather than because it determined that the facts did not warrant a departure").

*Id*. at 1395.

It is apparent that the district court felt that, once it determined that Adams was in a career offender status, it could not depart downward because Adams had been placed in Category VI merely because of his career offender status just like other career offenders. At least, the district court was ambivalent in this regard. That approach was too restrictive and the district court's review should have been based on a consideration of whether Adams' Category VI generally overrepresented the seriousness of his criminal history. Limiting the analysis to a comparison to other career offenders might result in downward departures never being granted to career offenders. We should remand the case as to Adams for a further sentencing hearing.[1] As in *Webb*, "[I] express no view as to whether a downward departure should, in fact, be granted in [Adams'] case, but [I would] hold that the district court may exercise its

---

[1]*See United States v. Spencer*, 25 F.3d 1105, 1112 (D.C. Cir. 1994) ("However, we may rule on Spencer's claim that the district court misconstrued the scope of its discretion under U.S.S.G. § 4A1.3."); *United States v. Beckham*, 968 F.2d 47, 53 (D.C. Cir. 1992) ("Although a refusal to depart downward <u>where</u> <u>there</u> <u>is</u> <u>authority</u> <u>to</u> <u>do</u> <u>so</u> is within the unreviewable discretion of the district court ..., we will remand a case for resentencing when the district court indicates erroneously that 'his discretion was constrained in a way that it actually was not.'") (Emphasis in original; citations omitted); *United States v. Pickney*, 938 F.2d 519, 521 (4th Cir. 1991) ("'"[c]areer offender" is a type of, not an alternative to, criminal history' and the flexibility authorized by § 4A1.3 applies to career offender status, as it does to other criminal history categories") (citing *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991)).

discretion to decide whether such a departure is warranted with respect to [Adams]." 139 F.3d at 1396.

I also question the holding in *Rucker*, cited by the majority, to the extent, if any, that it suggests that the nature of the convictions qualifying for career offender status cannot be considered in any way with regard to downward departure determinations. I do not believe that it so holds. The *Rucker* case merely holds that the district court cannot consider the quantity of the controlled substance involved in an otherwise qualifying conviction. *United States v. Govan*, 293 F.3d 1248 (11th Cir. 2002), also involved the reversal of a downward departure based on a consideration of the quantities of drugs.

I am not aware of any cases which hold that the district court, in determining whether to downwardly depart in a career offender case, cannot consider the type of charges resulting in qualifying convictions. Surely, two murder or two kidnapping convictions would be deemed to be more serious than two concealed weapons convictions. I suggest that the district court should be able to consider such disparate conduct. If not, common sense has been barred from the analysis. If carrying a concealed weapon is not less "serious" than murder or kidnapping, the word has lost its meaning. Since this issue has not been addressed by the parties on this appeal, I

would hold that the district court can, on remand, first address whether such a basis for downward departure is permissible under the holdings of this court.

I further reference the following cases which suggest that whether the facts of a purported career offender-type violation can be considered may depend upon whether the crime is one that is specifically listed under §§ 4B.1 and 4B.2 as a crime of violence. Having a concealed weapon is not so listed. *See United States v. Garcia*, 42 F.3d 573, 577 (10th Cir. 1994) ("The language used by the Commission indicates that, for purposes of determining whether an individual is a career offender under USSG § 4B1.1, the fact he has been convicted of an offense such as 'burglary of a dwelling' that is specifically listed as a 'crime of violence' forecloses further inquiry by the sentencing court."); *United States v. Telesco*, 962 F.2d 165, 166 (2d Cir. 1992) ("Application note 2 to this section lists additional crimes that are 'categorically classif[ied]' as 'crimes of violence.'"); *United States v. Wright*, 957 F.2d 520, 521 (8th Cir. 1992) ("Because use or threatened use of force is an element of robbery, a person convicted of robbery has been convicted of a crime of violence. . . . The guideline note's statement that ' "[c]rime of violence" includes ... robbery' supports our view.") (citation omitted); *United States v. Parson*, 955 F.2d 858, 871-72 (3d Cir. 1992) (same); *United States v. Wilson*, 951 F.2d 586, 588 (4th Cir. 1991) (same); *United States v. McAllister*, 927 F.2d 136, 139 (3d Cir. 1991) (same); and *United States v.*

*Terry*, 900 F.2d 1039, 1042 (7th Cir. 1990) (same). To the extent that Eleventh

Circuit law is to the contrary, I think that it should be re-examined. At the very least,

a district court should be able to determine if the possession of a concealed weapon

actually involved any potential violence. This would not be the same as determining

guilt or innocence of the offense.

I further question whether § 4B1.1 career offender status should be based at all

upon convictions for the offense of merely carrying a concealed weapon.[2] Such

convictions do not clearly fit either of the following § 4B1.2 definitions of a "crime

of violence:"

> The term "crime of violence" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that: (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The carrying of a concealed weapon is not one of the offenses specifically listed in the

Application Notes to § 4B1.2.[3] Apparently, however, *United States v. Gilbert*, 138

---

[2] I agree with Judge Cox's dissent in *United States v. Hall*, 77 F.3d 398, 402-03 (11th Cir. 1996).

[3] Application Note 1 includes the following:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted

F.3d 1371 (11th Cir. 1998), has resolved that issue.[4] It is ironic, as argued by Adams' counsel, that carrying a concealed weapon by a non-felon is a crime of violence, but possession of a firearm by a felon is not. *Compare Gilbert*, 138 F.3d at 1372 (carrying a concealed weapon), *with Stinson v. United States*, 508 U.S. 36, 47 (1993) (possession of a firearm by a felon).

The initial harshness of including all concealed weapon violators as violent offenders is exacerbated by the restrictions placed on downward departures by cases such as *Rucker*. I recommend that the holdings including all concealed weapon violations under the umbrella of career offender analysis be reviewed by this court *en banc* under a plain error analysis. What type of "weapons" are considered: firearms only, knives, scissors, others?[5] What if kept for protection or self-defense? Is there no exception?

In *United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990), the court stated:

---

involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

[4]It should be noted that *Gilbert* stated: "Gilbert is correct that the district court could have departed downward if it had found Gilbert's criminal history to be overrepresented. *See* U.S.S.G. § 4A1.3 (policy statement) (downward departure may be appropriate for defendant with extensive history of petty crime.)" 138 F.3d at 1373 (citing *United States v. Lindia*, 82 F.3d 1154, 1165 (1st Cir. 1996). The court in *Gilbert* based its decision, at least in part, on the fact that "the district court did not suggest that Gilbert's criminal history did not adequately reflect the seriousness of his conduct." 138 F.3d at 1373. The district court here did so suggest.

[5]This judge was recently required to relinquish some scissors at the Birmingham Airport.

Whitfield also claims his conviction of carrying a concealed weapon under *Mo. Ref. Stat. § 571.030(1) (1985)* is not a violent felony. We agree. Although carrying an illegal weapon may involve a continuing risk to others, the harm is not so immediate as to "present[] a serious potential risk of physical injury to another." 18 U.S.C. § 924(c)(2)(B)(ii); *see also United States v. Johnson*, 704 F. Supp. 1403, 1407 (E.D. Mich. 1989) (carrying a concealed weapon is not a violent felony), *aff'd per curiam*, 900 F.2d 260 (6th Cir. 1990).

In *United States v. Chapple*, 942 F.2d 439, 442 (7th Cir. 1991), the court stated:

> The district court in our case concluded that "carrying a handgun in one's belt in a city while using public transportation has a great potential for serious injury to the public." The government also emphasized the inherent danger of this concealed weapon. While we agree that the potential for a dangerous, violent act is enhanced by the possession of any weapon-brass knuckles, black jacks, knives, chains or handguns-unless the use of the weapon is overtly implied it is not a crime of violence under the Sentencing Guidelines.

> In this case Chapple was riding in a Chicago taxi in daylight hours with a handgun tucked in the waistband of his pants. The gun was not displayed or brandished. There is no evidence that even any touching, gesturing or reference to the gun occurred. Nothwithstanding the deference we must give the district court in its application of the Guidelines, the threat posed by simple possession of a weapon, without more, does not rise to the level of an act that "by its nature, presented a serious potential risk of physical injury to another."

In *United States v. Frazier-El*, 204 F.3d 553, 563 (4th Cir. 2000), the court noted the split between the Eleventh and Eighth Circuits.

15

In summary, I believe that there are a number of reasons why this court should consider these issues *en banc*. An *en banc* guide on all these issues would be beneficial to the district courts. In any event, I feel that the case should be remanded for resentencing.