**UNITED STATES of America, Plaintiff,**

v.

**Dennis K. KANAHELE, (01) a.k.a. "Bumpy", Gordon Kaaihue, (02), Defendants.**

**Crim. No. 95–00764HG.**

United States District Court, D. Hawai'i.

Aug. 21, 1995.

Leslie E. Osborne, Jr., United States Attorneys Office, Honolulu, HI, for U.S.

Hayden Aluli, Honolulu, HI, for Defendant Dennis K. Kanahele.

Sidney Michael Quintal, Honolulu, HI, for Defendant Gordon Kaaihue.

### ORDER AFFIRMING MAGISTRATE JUDGE'S DETENTION ORDER

GILLMOR, District Judge.

Defendant Dennis "Bumpy" Kanahele's appeal from Magistrate Judge Barry Kurren's detention order came on for hearing on August 9, 1995. Assistant United States Attorney Leslie Osborne, Jr., appeared for the United States, and Hayden Aluli appeared for Defendant, who was present. The Court, having considered the record and pleadings

in this case, the pretrial services reports and arguments made by counsel, affirms the detention order.

## I. BACKGROUND

This case arises from Defendant's alleged harboring of a federal fugitive, Nathan Brown, and forcible obstruction of the efforts of officers of the Honolulu Police Department (HPD) and United States Marshals to execute a federal warrant on Brown on January 27 and March 16, 1994. The warrant in question was issued by this Court upon Brown's failure to appear to begin serving a 78–month sentence for tax fraud, intimidating a court officer and related charges.[1] The Government alleges that on one of these occasions Defendant summoned fellow members of his self-proclaimed "Nation of Hawaii" to assist him, leaving federal officers the choice of using their weapons or, as they chose to do, withdrawing. The Nation of Hawaii is an organization of persons who take the position that the United States is illegally occupying Hawaii. The organization has an informal headquarters in a remote rural compound in Waimanalo, a constitution, vehicles with its own license plates in lieu of or in addition to valid State of Hawaii plates, and a purported head of state, Mr. Kanahele.

On August 2, 1995, a federal grand jury charged Defendant in a three-count indictment with knowingly and wilfully obstructing the execution of a federal arrest warrant in violation of 18 U.S.C. § 1501 (count I); forcibly interfering with a deputy United States Marshal in the performance of his duties in violation of 18 U.S.C. § 111 (count II); and harboring a federal fugitive in violation of 18 U.S.C. § 1071 (count III). Defendant was arrested later that day at Honolulu International Airport.

On that same date, the Government moved to detain defendant without bail pursuant to 18 U.S.C. § 3142. On August 4, 1995, Magistrate Judge Barry Kurren held a hearing on the motion. The magistrate judge found that

Defendant was charged with offenses involving the threatened or attempted use of force, and accordingly, that the charges against Defendant included a "crime of violence" mandating, upon the Government's motion, a detention hearing under section 3142. The magistrate judge further found that Defendant is a flight risk and a danger to the community and that no condition or combination of conditions of release would reasonably assure Defendant's appearance or the safety of others.

At the outset of the detention hearing, Mr. Kanahele offered the following statement: "My name is Puuhonua Bumpy Kanahele; I am the head of state of the Nation of Hawaii, promulgated constitution of Hawaii, January 16, 1995. And I would like to make a motion that there is a conflict of law, and also, I would like for the federal prosecution to show venue and jurisdiction in the future." Transcript of August 2, 1995 Detention Hearing (TR I) at 3. Magistrate Judge Kurren denied the motion. At the close of the hearing, the magistrate judge included among the "constellation of evidence" supporting the Government's motion the fact that Mr. Kanahele renounced this Court's jurisdiction at his arraignment, a view Mr. Kanahele's opening statement at the detention hearing underscored.

Magistrate Judge Kurren further based his findings on the nature of the charges against Defendant, involving forcible interference with the execution of warrants issued by this Court. The magistrate judge further considered Defendant's criminal history, including a 1984 assault conviction and 1987 felony conviction for terroristic threatening, resisting arrest and trespass in connection with an incident at Makapuu lighthouse.

The magistrate judge also took into account evidence of Defendant's disregard for the orders and jurisdiction of this and other courts, including criminal contempt charges arising from Defendant's failure to appear in

1. On June 14, 1994, Brown was convicted in this Court of conspiracy to file fraudulent income tax statements, making false statements and fraudulent claims to an agency of the United States, intimidating or impeding a court officer, mail fraud and fraudulent claims under 18 U.S.C.

§§ 287, 371, 1001, 1341 and 1503. On September 27, 1991, Brown was sentenced to seventy-eight months imprisonment. After Brown failed to turn himself in to the United States Marshal's Office for transfer to a federal prison, this Court issued a warrant for his arrest.

state court, and testimony of a U.S. Pretrial Services officer regarding her recommendation that Defendant not be released. Finally, Magistrate Judge Kurren heard and considered the following testimony: testimony of deputy U.S. Marshal Charles Markle regarding Defendant's efforts to block the arrest of Nathan Brown; testimony of Joseph Aveiro, Assistant Chief of Police of the Honolulu Police Department (HPD); and testimony of United States Marshal Annette Kent recalling that during the performance of her duties, Defendant told her "You put your hand on my gate, I'll move your hand. You come through my gate, or into my yard, I'll knock you down."[2] On this basis, the magistrate judge issued the order to detain Defendant without bail pending trial.

On August 7, 1995, Defendant filed a notice of expedited appeal from the detention order. On August 9, 1995, Defendant's appeal came on for hearing before this Court. The Court reviewed the transcript of the proceedings below and heard the testimony of additional witnesses. Defendant called Mahealani Kamauú, Executive Director of the Native Hawaiian Legal Corporation, as a character witness. Ms. Kamauú testified on direct that she believed that Defendant did not pose a flight risk or danger to the community. On cross-examination, Ms. Kamauú stated that she was unaware that Defendant had failed to appear and reneged on an agreement to appear in state court. She acknowledged that such information would affect her opinion as to whether Defendant poses a flight risk.

Defendant also called Marc Oley, former Chairman of the State of Hawaii's Board of Paroling Authority, to rebut the Government's evidence that Defendant was armed during the 1987 Makapuu lighthouse incident. The Government submitted a police report in which the arresting officer described seeing Defendant "hold up this shotgun and point it towards the direction of myself and the other officers of this unit and say 'come on you fuckers, when you guys going shoot, you on KAAWA ESTATES, I going kill you.'" Government's Exhibit 2. Mr. Oley was a member of the parole board before which Defendant appeared following his conviction and imprisonment for terroristic threatening. Defendant proffered Mr. Oley's testimony for the proposition that Defendant's parole board considered evidence raising doubts about whether Defendant was in fact armed with a shotgun during the encounter. On cross-examination, however, Mr. Oley indicated that he and the parole board did not determine and were in no position to determine whether Defendant was armed with a shotgun at Makapuu lighthouse and that he thus could not testify in support of Defendant's proffer in this regard.

Finally, Defendant's counsel proffered that if Defendant were to take the stand, Mr. Kanahele would state to the Court and "all of his kupuna counsel who are present, and to all members of his Nation of Hawaii that he will promise to appear in Court through all the Court proceedings" and "to refrain from any services of arrest warrants pending the litigation that is at bar now."

In rebuttal, the Government presented the testimony of Special Agent Jerry Bogart of the Federal Bureau of Investigation. On August 2, 1995, Agent Bogart was assigned to arrest Defendant on the charges underlying the instant case. Agent Bogart testified that Defendant, while being transported to the United States Courthouse that afternoon, stated "I must notify you ... that I'm head of the Nation of Hawaii, and that I do not recognize your jurisdiction over me; and that if anyone should be under arrest, it was you for your war crimes and the overthrow of the Hawaiian Government."

At the close of the hearing, the Court affirmed and adopted the magistrate judge's detention order. This written order followed.

---

2. The magistrate judge declined to consider evidence that the Nation of Hawaii has had contacts with the Michigan Militia, that its members are storing arms and ammunition in former World War II bunkers in Waimanalo, and that on September 24, 1993, 25 to 30 members of an affiliated group, the "Ohana Council of the Hawaiian Kingdom", disrupted a state court hearing on the island of Hawaii, refused to leave the courtroom and prevented the judge and staff from exiting the courthouse.

## II. DISCUSSION

### A. *Standard of Review*

■ On appeal, an order of a magistrate judge detaining a defendant pursuant to the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.,* is reviewed de novo. Local Rule 304–6.

### B. *Recusal*

■ On August 9, 1995, Defendant filed a Motion to Recuse Magistrate Judge Nunc Pro Tunc on the basis that Magistrate Judge Kurren "had an actual or apparent conflict of interest." Defendant alleges that this "conflict of interest" arises from the magistrate judge's receipt on June 22, 1995, together with certain other federal judges and officials in the District of Hawaii, of a "Notice of Apartheid, War Crimes and War Crimes Against Humanity." Government's Exhibit No. 3 (the Notice) bearing his name. The Notice accuses its recipients of having "full knowledge and participation in the direct murder and extermination of the Kanaka Maoli People and their Government" and admonishes that "you shall be sought out, arrested and imprisoned, to be brought before an international Criminal Tribunal to answer for your participation in crimes of Apartheid and Genocide." The Notice concludes with the statements, "There will be no appeal. Judgment will be final." It is signed by the purported Attorney General of the Nation of Hawaii.

Under 28 U.S.C. § 455(a), "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) further provides that recusal is required where a federal judge "has a personal bias or prejudice concerning a party, or a personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Defendant contends that these provisions are applicable in view of Magistrate Judge Kurren's

statement at the detention hearing that he agreed with another federal judge's publicly stated view that the Notice is a "threat."

Neither the Notice nor Magistrate Judge Kurren's comment required his recusal under section 455.[3] As to subsection (a), Magistrate Judge Kurren has issued an Order Denying Motion to Recuse Magistrate Judge Nunc Pro Tunc in which he finds that his receipt of the Notice "did not prevent the court from rendering a fair and impartial decision of the government's Motion to Detain. The court does not have any personal bias against the defendant, and there is no conflict of interest in this case."

The Court adopts this finding. Nothing in the record remotely suggests that the Notice affected the magistrate judge's ability to preside impartially over the detention hearing. The transcript of the three-and-a-half hour detention hearing demonstrates careful, even-handed consideration limited to the legal issues relevant to the section 3142 inquiry. Magistrate Judge Kurren's characterization of the Notice as a "threat" was an objective assessment of the intent of its sender. This comment was not an acknowledgment that the magistrate judge subjectively felt threatened or an indication that the Notice compromised his impartiality.

■ As to subsection (b), threats to a judge may in extreme cases create an appearance of bias sufficient to warrant recusal. *See United States v. Cerrella,* 529 F.Supp. 1373, 1374 (S.D.Fla.1982). In *Cerrella,* recusal was deemed proper where a defendant threatened to murder the presiding judge and then took concrete steps to this end. The instant case does not involve a combination of words and actions rising to this level. The Notice is better characterized as imparting a threat to arrest the recipients and initiate legal proceedings, albeit in an unspecified "international Criminal Tribunal." But "it is clear that a judge is not disquali-

---

3. Additional provisions governing the recusal of federal judges are set forth in 28 U.S.C. § 144. "Although the substantive test for bias or prejudice is identical in sections 144 and 455, the procedural requirements of the two sections are different." *United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980). Defendant has not met sec-

tion 144's stricter procedural requirements, including the filing of an affidavit specifically alleging facts stating the grounds for recusal under section 144. *See id.* Accordingly, the Court limits its inquiry to Defendant's section 455 claims.

fied under 28 U.S.C. § 455 (or 28 U.S.C. § 144 for that matter) merely because a litigant threatens to sue him." *In re Martin–Trigona,* 573 F.Supp. 1237, 1243 (D.Conn. 1983); *see also, United States v. Studley,* 783 F.2d 934, 939–40 (9th Cir.1986). This rule is sound, given that a contrary rule would create an unacceptably expedient tool for judge-shopping, *see Standing Committee on Discipline of the U.S. District Court for the Central Dist. of Cal. v. Yagman,* 55 F.3d 1430, 1443–44 (9th Cir.1995), and is applicable here, especially in view of the remoteness and implausibility of the threatened proceedings.

### C. *The subsection (f)(1), crime of violence inquiry*

Defendant based his appeal of the detention order on the assertion that the magistrate judge erroneously concluded that no condition or combination of conditions could reasonably assure Defendant's appearance and the safety of others. In his notice of appeal and supporting memoranda, Defendant does not challenge the finding below that Mr. Kanahele is charged with a "crime of violence" under section 3142(f)(1)(A).

Where an arrestee is charged with a "crime of violence", upon the Government's motion for a detention hearing, "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in [section 3142(c) ] will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The subsection (f) inquiry becomes applicable upon a finding that release is not mandated under subsection (a), (b) or (c). Defendant was ineligible for release under these subsections.

■ The magistrate judge correctly ruled that Defendant is charged with a "crime of violence" and, accordingly, that the prerequisite for a detention hearing under subsection (f)(1) was established. "Crime of violence" is defined as:

(A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; or

(B) any other offense that is a felony that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

■ Count II in the indictment involved the forcible obstruction of law enforcement officials in violation of 18 U.S.C. § 111. Section 111, entitled "Assaulting, resisting, or impeding certain officers or employees," is the first statute under Chapter 7 of Title 18, entitled "Assault." Section 111 requires that the proscribed conduct be done "forcibly" and thus makes force an element of the offense in keeping with the definition of "crime of violence" under section 3156(a)(4).[4] Accordingly, the Court affirms Magistrate Judge Kurren's finding that Defendant is charged with a crime of violence under section 3142(f)(1)(A).

### D. *Factors to be considered under subsection (g)*

■ Under subsection (g), the court determines whether any satisfactory condition or combination of conditions of release exists in light of the following factors:

(1) the nature of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person ...

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

Magistrate Judge Kurren properly considered each of the foregoing factors. As to (1), the magistrate judge took into account that Defendant is charged with a crime of vio-

---

**4.** Defendant's underlying conduct, while relevant to the issue whether Defendant should be detained, is not germane to the threshold issue whether the charged offenses require a detention hearing. *See United States v. Johnson,* 704 F.Supp. 1398, 1403 (E.D.Mich.1988).

lence, as discussed above. As to (2), the magistrate judge heard extensive testimony from Deputy U.S. Marshals Charles Markle and Larry Tice regarding the actions allegedly taken by Defendant in interfering with the arrest of Nathan Brown. As to (3), the magistrate judge considered the recommendation of a Pretrial Services officer, based on an extensive analysis of Defendant's criminal and employment history, family and community ties, financial resources and other factors, that Mr. Kanahele is not a good candidate for release pending trial.

Finally, as to (3) and (4), the magistrate judge heard the testimony of U.S. Marshall Annette Kent regarding conduct by Defendant casting considerable doubt on Defendant's willingness to cooperate peacefully with U.S. Marshals in the performance of their duties. The magistrate judge further considered evidence that Defendant abjures the jurisdiction of this Court and the courts of the State of Hawaii. *See* Government Exhibit No. 4. The magistrate judge's subsection (g) inquiry was complete and impartial and correctly resulted in a determination that the Government had met its burden of proof as to Defendant's status as a flight risk and danger to the community under the Bail Reform Act. *See United States v. Townsend,* 897 F.2d 989 (9th Cir.1990); *United States v. Walker,* 808 F.2d 1309 (9th Cir. 1987).

### E.  *The subsection (c) inquiry*

■ Defendant's chief contention of error is that the magistrate judge failed to consider whether conditions of release could be fashioned that would reasonably assure Defendant's appearance and the safety of the community. The record does not support this contention. At the close of the detention hearing, Defendant's counsel proposed various conditions, including a non-appearance bond, electronic monitoring, daily reporting requirements and house arrest. Magistrate Judge Kurren acknowledged that he could order such conditions, but rejected the proposed conditions on the ground that the evidence presented indicated that Defendant would disregard the conditions. TR I at 136, 143.

### F.  *Additional evidence on appeal*

The additional testimony offered at the hearing held on Defendant's appeal did not merit reversal of the detention order. Ms. Kamauú's testimony on cross-examination revealed that her knowledge of Defendant's history of flouting judicial jurisdiction was incomplete in important respects. She candidly indicated that fuller knowledge of this history would change her opinion as to whether Defendant is a man of his word and does not present a flight risk. Given this acknowledgment, the Court finds that Ms. Kamauú's testimony did not strengthen Defendant's eligibility for pretrial release.

Mr. Oley's testimony similarly does not furnish a basis for reversal of the detention order. Mr. Oley was called to cast doubt on whether Defendant wielded a shotgun while resisting arrest at Makapuu lighthouse in 1987. Putting aside the extremely limited probative value of an ex parte parole hearing with regard to the events underlying the offenses of conviction, the Court notes that Mr. Oley frankly admitted that he was unable to testify in support of Defendant's proffer that it is not entirely clear that Defendant was armed with a shotgun. The Court was thus left with the uncontroverted evidence in the contemporaneous police report that Defendant pointed a shotgun at police officers as they attempted to arrest Mr. Kanahele. Mr. Oley's testimony thus similarly failed to alter the section 3142 analysis properly applied by the magistrate judge.

Finally, the Court accepts the proffer of Defendant's counsel that Mr. Kanahele would promise to this Court and his kupuna elders to appear before this Court, comply with its orders and refrain from serving further purported arrest warrants on state and federal court judges and officials. The Court, however, finds that Mr. Kanahele's comments abjuring federal jurisdiction upon his arrest by Agent Bogart and his comments before Magistrate Judge Kurren challenging or abjuring this Court's jurisdiction more closely reflects Mr. Kanahele's likely mindset in this regard in the event he were released. His statements, together with the totality of the evidence presented before this

Court and Magistrate Judge Kurren and, in particular, testimony of the U.S. Marshals regarding Mr. Kanahele's efforts to forcibly block the execution of warrants issued by this Court and to enlist numerous supporters to assist him, raises grave concerns for this Court as to Mr. Kanahele's non-appearance. The totality of evidence raises an unacceptably likely prospect that Mr. Kanahele would entrench himself in the Nation of Hawaii's compound and resist apprehension even more aggressively than he is alleged to have obstructed the arrest of Nathan Brown, and with potentially far more dire consequences.

In short, Mr. Kanahele's proffer does not sufficiently allay this Court's concern, based on the totality of subsection (g) factors, the Pretrial Services Report and the record below, that Defendant would neither voluntarily appear for trial nor submit to arrest in a manner reasonably assuring the safety of the community.

### III. CONCLUSION

Defendant is charged with resisting the enforcement of orders of this Court on two occasions. The totality of subsection (g) factors does not give this Court reasonable assurance that he will comply with the terms of an order permitting his conditional release before trial. Accordingly, the Court AFFIRMS Magistrate Judge Kurren's Order of Detention Pending Trial.

IT IS SO ORDERED.

### *ORDER DENYING DEFENDANT KANAHELE'S MOTION TO RECONSIDER*

Defendant Dennis "Bumpy" Kanahele's appeal from Magistrate Judge Barry Kurren's detention order came on for hearing on August 9, 1995. The Court, after having considered the record and pleadings in this case, the pretrial services reports, arguments made by counsel, and testimony presented at the August 9, 1995 hearing, affirmed the detention order. On August 18, 1995, Kanahele filed a motion for the Court to reconsider its ruling. Kanahele attaches letters and newspaper articles in support of his position that he would not present a risk of non-appearance or a danger to the community.

Kanahele has raised no new facts warranting a reconsideration of the Court's order detaining Kanahele without bail prior to his trial, presently scheduled for October 3, 1995. Kanahele's motion for reconsideration is DENIED.

IT IS SO ORDERED.