**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-9176
_____

D. C. Docket No. 1:96-CR-75-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY WAYNE WEBB,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 30, 1998)**

Before TJOFLAT, BIRCH and MARCUS[*], Circuit Judges.

BIRCH, Circuit Judge:

Anthony Wayne Webb appeals the 262-month sentence he

received following his conviction for attempted robbery of mail

_____

[*]Honorable Stanley Marcus was a U.S. District Judge of the
Southern District of Florida sitting by designation as a member of
this panel when this appeal was argued and taken under submission.
On November 24, 1997, he took the oath of office as a United States
Circuit Judge of the Eleventh Circuit.

matter, 18 U.S.C. § 2114(a).  In vacating Webb's sentence and remanding this case for resentencing, we decide, in an issue of first impression in this circuit, that a district court has the authority under the Sentencing Guidelines to exercise its discretion to grant a request for downward departure with respect to a defendant who has been classified as a career offender.

## I.  BACKGROUND

For the purpose of resolving the issues raised in the appeal, the facts underlying Webb's conviction are undisputed: On January 16, 1996, Webb entered a United States Post Office and presented a note to a postal clerk.  According to Webb's post-arrest statement, the note indicated that this was a robbery and that the clerk should give him all the money reserved for money orders.  See Exh. 3. Testimony at trial reveals that the postal worker screamed and ran away after reading the note.  Webb subsequently ran out of the post office and was apprehended and arrested by two postal inspectors

2

within minutes of the attempted robbery. At the time this offense was committed, Webb was fifty-one years old and had spent much of his life committed to mental institutions or in prison.

It is also undisputed that Webb had robbed the same post office in 1985; Webb pled guilty and was sentenced to ninety-six months in custody for this offense. After his release on parole in 1991, Webb returned to the same post office and presented to two postal clerks a note that was, in essence, identical to the one used in the instant case. Following the 1991 incident, Webb was convicted of forcibly intimidating postal service employees, in violation of 18 U.S.C. § 111, and sentenced to thirty months' imprisonment.

The Presentence Investigation Report (PSR) prepared in connection with this case recommended that Webb be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1.[1] The PSR

---

[1]Under this guideline provision, a defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least

3

specifically referenced the 1985 and 1991 post office incidents, discussed above, as crimes of violence that justified Webb's qualification as a career offender. Both prior to and during the sentencing proceeding, Webb objected to the enhancement of his offense level based on his categorization as a career offender, and argued that his prior conviction for intimidating a postal worker did not constitute a crime of violence under the Sentencing Guidelines. The government responded that the statutory offense for which Webb had been convicted in 1991 involved force as an element; alternately, the government posited that the conduct underlying the federal charge, attempted robbery, necessarily implicated the use or attempted use of force. The district court adopted the government's position and overruled Webb's objection with respect to the career offender enhancement.

Webb then moved for a downward departure in his sentence and asked that the court reduce his sentence to approximately the

two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.

same level as it would have been without the career offender enhancement. In support of his request, Webb primarily relied on his arguments with respect to the enhancement in his sentence as a career offender and noted that he consistently had sought through criminal conduct only to be reinstitutionalized. The government, in response, averred that a downward departure – particularly to the degree sought by the defendant – was not warranted in this case. Consistent with an implicit denial of Webb's motion for downward departure, the court then imposed sentence. Immediately thereafter, Webb's counsel stated: "Judge, we do object to the sentence imposed for the reasons stated earlier, as well as the court's failure to engage in a downward departure because it agreed it couldn't." R5-18. In response to this assertion, the court stated: "Let the record so reflect. Thank you." Id. After a short recess, the court reconvened because the sentencing judge had neglected to inform Webb of his right to appeal. At that time, the following exchange took place:

The Court: Let the record further reflect that the court did not grant the request Mr. Kish sought, that I depart from the guidelines and impose a lesser sentence, because that would be contrary to my initial ruling earlier, and I overrule you on the guideline issue.

However, I do feel that the guidelines in this situation are very harsh, and I wish we didn't have the guideline. Maybe some provision later on may provide the court with a situation wherein the court, if there are compelling reasons for doing so, can depart, based on the court's own assessment of what the sentence ought to be. But in this case, I did not find that, and for that reason I will let it stand.

Mr. Webb: May I find out what that sentence was again?

The Court: 262 months.

Mr. Webb: 362 months?

The Court: 262.

Mr. Vineyard: I want to make sure the record is clear the court recognizes it has the authority to downwardly depart but chose not to do so.

The Court: That's what I said.

R5-19-20.

On appeal, Webb argues that the court erred in finding, implicitly, that his 1991 conviction for intimidation of a postal worker, 18 U.S.C. § 111, constituted a "crime of violence" that served as one of the two predicate offenses required to render Webb eligible for status as a career offender. Webb additionally contends that the district court erroneously believed that it lacked the authority to grant a downward departure in his sentence. He further urges that the guidelines do, in fact, authorize the court to downward depart and that such a departure was warranted here. We address seriatim each of Webb's challenges to his sentence.

## II. DISCUSSION

### A. Career Offender Enhancement

We review a district court's interpretation of the Sentencing Guidelines de novo. United States v. Pinion, 4 F.3d 941, 943 (11ᵗʰ Cir. 1993).

As noted, § 4B1.1 establishes that a defendant qualifies as a career offender if, <u>inter alia</u>, he has at least two prior felony convictions that constitute crimes of violence.  The guidelines define a crime of violence as

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that –
>
> (I) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2.  The commentary further explicates the definitional parameters of a crime of violence as specifically including

> murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.  Other offenses are

included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.  Under this section, the conduct of which the defendant was convicted is the focus of the inquiry.

U.S.S.G. § 4B1.2, comment. (n.2).

The statutory provision under which Webb was convicted in 1991, 18 U.S.C. § 111 [hereinafter § 111], provides, in relevant part, that whoever

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . .
. . . .
shall . . . be fined under this title or imprisoned not more than three years, or both.

9

The final, documented judgment recording Webb's 1991 conviction under this statutory section describes the nature of the offense as "Intimidation of a Postal Service Employee."  Exh. 5.

Webb submits that the court erred in categorizing him as a career offender based in part on his conviction for intimidation of a postal worker because that offense does not implicate as an element the use, threatened use, or attempted use of physical force; in other words, Webb contends that the particular offense conduct for which he was convicted is not a crime of violence as that term is defined in the guidelines.  In support of this contention, Webb suggests that the plain statutory language referenced in his judgment neither explicitly states nor contains by reference to the statutory elements of the offense the use (actual, attempted, or threatened) of physical force.  Furthermore,  because the pertinent statutory language is unambiguous, we are precluded from looking at the conduct underlying the conviction.

Webb's argument is premised on two underlying principles: First, Webb suggests that there is a legally cognizable distinction between the terms "force" and "physical force" that differentiates those types of crimes that may involve the possibility of "force" or "violence" – as commonly understood and discussed in our case law – from those that are specifically denominated "crimes of violence" in the Sentencing Guidelines.  Second, Webb assumes that the language of § 111 is unambiguous on its face and therefore precludes our examination of the actual conduct -- i.e., attempted robbery -- underlying his conviction to determine whether it in fact constitutes a crime of violence.

The government concedes that a prior conviction for intimidation under § 111 has never been used as a predicate offense to classify a defendant as a career offender under the Sentencing Guidelines.[2]   Nonetheless, the government submits that § 111

_____

[2]As noted by the government, one district court in Hawaii has affirmed a magistrate judge's decision to detain a defendant indicted under § 111 without bail pending trial on the ground that the offense with which the defendant had been charged, forcibly interfering with a U.S. Marshal in the performance of his duties, was a "crime of violence."  See U.S. v. Kanahele, 951 F. Supp. 921,

11

explicitly contains the word "force", which modifies each of the enumerated offenses for which a defendant could be convicted under the statute, and therefore qualifies as a crime of violence pursuant to the Sentencing Guidelines. In the alternative, the government contends that the specific, actual offense conduct underlying Webb's indictment and conviction was a crime of violence.

Webb's attempt to distinguish between the terms "force," as used in § 111, and "physical force," as used in the guidelines, is not without some intrinsic appeal. Unfortunately, Webb points to neither decisional law nor commentary within the guidelines that isolates or differentiates these two terms, nor does he refer to any source that specifically defines the elements of or illuminates the

---

926 (D. Hawai'i 1995). The statutory provision at issue in <u>Kanahele</u> sets forth the factors to be considered in determining a defendant's eligibility for release on bond prior to trial and establishes that indictment for a "crime of violence" is to be taken into account by the court in making that determination. <u>See</u> 18 U.S.C. 3142(f)(1)(A). Significantly, the definition of the phrase "crime of violence" presented in the statute is virtually identical to that employed in the guidelines under § 4B1.2. <u>See</u> 18 U.S.C. § 3156(a)(4).

meaning of "intimidation" as that term is used in § 111. Indeed, we can find no case that expands upon the various types of non-physical force that could be used to intimidate a government official; similarly, no court has specifically distinguished those aspects of the statute that necessarily implicate the use or threatened use of physical violence, such as assault, from those that may not involve such patently physical conduct. The vast majority of cases involving a conviction pursuant to this statutory provision concern criminal conduct that is manifestly physically violent in nature. See, e.g., United States v. Morris, 131 F.3d 1136 (5th Cir. 1997) (assault with deadly weapon); United States v. Garcia-Camacho, 122 F.3d 1265 (9th Cir. 1997) (assault); United States v. DePace, 120 F.3d 233 (11th Cir. 1997) (same); United States v. Segien, 114 F.3d 1014 (10th Cir. 1997) (assault of corrections officer), petition for cert. filed (U.S. Aug. 26, 1997) (No. 97-6568); United States v. Valdez-Torres, 108 F.3d 385

(D.C. Cir. 1997) (assault with vehicle); <u>United States v. Matthews</u>, 106 F.3d 1092 (2nd Cir. 1997) (assault with dangerous weapon).

Webb correctly notes that the government has rejected his proposed distinction between "force" and "physical force" but has not explicitly argued that § 111, particularly with regard to the offense at issue here, is ambiguous on its face. Notwithstanding this fact, we believe that the question of whether physical force necessarily is an element of intimidation under this statutory provision is ambiguous. The statute itself does not contain any definitional, explanatory text that might shed some light on the intended scope of the words "forcible" or "intimidates."[3] The

---

[3]The Supreme Court had an opportunity to thoroughly examine the legislative history of § 111 in <u>United States v. Feola</u>, 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975). <u>Feola</u> raised the question of whether scienter was a required element of § 111. In concluding that § 111 did not mandate that an assailant know that his victim was a federal officer, the Court determined that the statute was intended both to protect the lives and safety of federal officers and to prevent the obstruction of the duties that such officers perform. Although the legislative background explored by the Court in <u>Feola</u> does express the concerns that § 111 likely was designed to address, this legislative history does little to clarify whether each offense described in the statute was intended to encompass solely physically violent conduct -- as in assault -- or the entire spectrum of "force" that might be employed to injure or impede a government officer in the performance of his duties.

14

dictionary defines the word "intimidate" as, <u>inter alia</u>, "to make timid; fill with fear . . . ; to force into or deter from some action by inducing fear." The Random House Dictionary of the English Language, (2d ed. 1987). We readily can imagine circumstances in which an individual is able to induce fear by either physical means (<u>i.e.</u>, the threat of actual physical violence) or non-physical means (for example, the threat of economic harm). Even assuming that we adopt Webb's argument that a legal distinction exists between different types of force, we nonetheless cannot say with certainty whether "forcible intimidation" under § 111 contains, as an element, the use, attempted use, or threatened use of physical force.

Having found the statute to be ambiguous with regard to this issue, we must look to the conduct underlying Webb's conviction. See <u>United States v. Spell</u>, 44 F.3d 936, 939 (11th Cir. 1995) ("[A] district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself.") It is

15

undisputed that the conduct that gave rise to Webb's 1991 conviction for forcible intimidation was, as in the instant case, attempted robbery. As previously noted, the Sentencing Guidelines expressly denominate robbery as a crime of violence under § 4B1.2. We are bound by the guidelines' specific reference to this offense as constituting a crime of violence, see Stinson v. United States, 508 U.S. 36, 42-43, 113 S. Ct. 1913, 1917-18, 123 L. Ed. 2d 598 (1993), and therefore affirm the district court's decision to sentence Webb as a career offender.

## B. Downward Departure

Generally, a defendant may not appeal a district court's refusal to depart downward. United States v. Baker, 19 F.3d 605, 614-15 (11th Cir. 1994). A defendant may appeal the court's failure to downward depart, however, on the ground that the court erroneously believed it lacked the authority to depart. Id. at 615.

Webb posits that, in this instance, the district court denied his request for a downward departure on the ground that it believed it lacked the authority under the guidelines to grant such a request. Webb further suggests that the relevant guideline provision does, in effect, authorize a sentencing court to depart downward based on a finding that a defendant's career-offender classification over-represents the seriousness of his prior criminal history or his likelihood of recidivism. The government argues that a close reading of the sentencing transcript reveals that the court, having understood its authority to depart from the guidelines, considered the factors pertinent to this particular case and determined that a downward departure was not justified. The government concedes that, given specific factual findings that might warrant a departure, the guidelines theoretically do authorize a court to grant a defendant's request to downward depart.

First, our independent review of the sentencing transcript reveals that the sentencing judge, at the very least, was bewildered

17

and ambivalent as to whether the guidelines authorized a downward departure in this instance. We are cognizant of the government's assertion that, during the  sentencing proceeding, the government never seriously contested the authority of the court to depart downward but argued that the extent of the departure sought by Webb was excessive.  The record also makes evident the attempt of both the government and defense counsel to "clean up the record" and extract from the court a statement clearly indicating its position with respect to whether a departure was authorized in this instance. Nonetheless, the court never provided a clear indication one way or the other; indeed, the court appears to have agreed with both the proposition that it lacked the authority to depart, see R5-18, as well as the proposition that it had the discretion to depart but chose not to do so in this case, see R5-20.  Our ability to evaluate the court's reasoning for denying Webb's request is further hindered by the court's speculation that "[m]aybe some provision later on may provide the court with a situation wherein the court, if there are

18

compelling reasons for doing so, can depart, based on the court's own assessment of what the sentence ought to be," R5-19, juxtaposed with its observation that "in this case, I did not find that, and for that reason I will let [the sentence] stand." Id. As noted, the record is far from clear as to the rationale underlying the court's denial of Webb's request for downward departure; on balance, however, the record more strongly suggests that the court believed that it was not authorized to depart downward in this case. We therefore resolve the ambiguity reflected in the record with respect to this issue in favor of the defendant and conclude that the court's decision was based on its belief that it lacked the discretion to grant Webb's request for a departure. See United States v. Hadaway, 998 F.2d 917, 919 (11th Cir. 1993) ("Although the record is somewhat ambiguous, it appears that the district court declined to depart downward because it lacked the authority to do so rather than because it determined that the facts did not warrant a departure.")

We further conclude that the guideline provision pursuant to which Webb seeks a departure in his sentence, U.S.S.G. § 4A1.3, does authorize such a departure under certain circumstances. This provision permits a court to depart either downward or upward from a defendant's prescribed sentence "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. § 4A1.3. Webb correctly notes that our circuit has never explicitly held that § 4A1.3 confers on the sentencing court the authority to depart downward, given the findings articulated above, in the specific case of a defendant who has been classified as a career offender. Consistent with every other circuit to have addressed this issue, we now hold that § 4A1.3 does authorize the sentencing court to downward depart regardless of a defendant's status as a career offender under § 4B1.1.[4] See e.g., United States

---

[4]Again, it is worth restating that the government's position in this appeal is that the district court understood its authority

20

v. Shoupe, 35 F.3d 835, 839 (3rd Cir. 1994) ("[W]here a defendant's offense level has been augmented by the career offender provision, a sentencing court may depart downward in both the criminal history and offense level categories under § 4A1.3."); United States v. Reyes, 8 F.3d 1379 (9th Cir. 1993) ("Since it is well established that a downward departure from career offender status is permissible . . . we look only to the circumstances of this case to determine whether the district court's stated basis for departure is appropriate.") (citation omitted); United States v. Clark, 8 F.3d 839, 843 (D.C. Cir. 1993) ("The circuits that have confronted the issue unanimously agree that the policy statement in § 4A1.3 permits a downward departure . . . for those who would otherwise qualify as career offenders . . . . Thus the district court was well within its legal authority in basing its downward departure on this factor."); United States v. Rogers, 972 F.2d 489, 493 (2nd Cir. 1992) ("Contrary to

---

to depart but chose not to. The government does not challenge Webb's contention that § 4A1.3 does, in fact, authorize a court to grant a defendant's request for downward departure.

21

the government's argument, there is nothing unique to career offender status which would strip a sentencing court of its sensible flexibility in considering departures.") (internal quotation marks omitted); United States v. Bowser, 941 F.2d 1019, 1023 (10th Cir. 1991) ("As a threshold issue, we agree . . . that the Sentencing Guidelines permit the district court to depart downward from career offender status."); United States v. Brown, 903 F.2d 540, 545 (8th Cir. 1990) ([Although] the government contends the guidelines prohibit departure in all career offender cases . . . [t]he overall policy provisions of the guidelines make clear that the Sentencing Commission did not intend to so completely restrict sentencing judges in this area."[5]

---

[5]Our decision in United States v. Gonzalez-Lopez, 911 F.2d 542 (11th Cir. 1990), cert. denied, 500 U.S. 933 (1991), is not inconsistent with our conclusion with respect to this issue. Although Gonzalez-Lopez involved a request for downward departure by a defendant classified pursuant to the Sentencing Guidelines as a career offender, our rejection of the district court's decision to grant the defendant's request was based solely on our determination that the court's stated reasons for departing downward did not support such a departure; stated differently, we held that the rationale enunciated by the court to justify its decision to depart downward was contrary to both the text of the guidelines and our prior decisional law.

We therefore conclude that the district court erroneously believed that it lacked the discretion to depart downward in this instance and, further, that § 4A1.3 does authorize a sentencing court to downward depart given the appropriate factual determinations. We express no view as to whether a downward departure should, in fact, be granted in this case, but hold that the district court may exercise its discretion to decide whether such a departure is warranted with respect to Webb.

Accordingly, we VACATE Webb's sentence and REMAND for resentencing consistent with this opinion.